## SUPREME COURT.

LAWRENCE BURKE, respondent agt. THE BROADWAY AND SEVENTH AVENUE RAILROAD COMPANY, appellants.

In an action against a railroad company to recover damages for injuries arising from negligence, where from the evidence there is no doubt of the negligence of the party injured contributing to the injury, the plaintiff should be *non-suited*.

And this rule applies to an action brought on behalf of a child six years of age, who sustains the injury.

"It was equally necessary for the *plaintiff to establish* the proposition that he *himself was without negligence and without fault.* This is a stern and unbending rule, which has been settled by a long series of adjudged cases, which we cannot overrule if we would." (*Per* GRIDLEY, *J. Spencer* agt. *Utica and Schenectady R. R. Co.* 5 *Barb.* 337.)

*New York General Term, June* 1857.

*Before* LEONARD, *P. J.,* CLERKE *and* MILLER, *Justices.*

THIS was an action to recover of the defendants damages alleged to have been sustained by the plaintiff in the loss of service of his infant son, a lad of about six years of age, whose leg was run over by one of the defendants' cars in Thompson street, in the city of New York, on the 3d day of May 1865, by the alleged negligence of the defendants, their agents or servants, and so badly injured as to require amputation.

The pleadings form part of the judgment roll in this action, a copy of which are as follows:

The plaintiff, by Miller, Peet & Nichols, his attorneys, complains against the defendants, and alleges:

*First.* That the defendants are a corporation, duly incorporated nnder the laws of the state of New York.

*Second.* That plaintiff is the father of Frank Burke, an infant, aged six years.

*Third.* That the defendants, by the fault and negligence of its servants, on the 3d day of May, 1865, in Thompson street, in the city of New York, ran one of its cars over said child of the plaintiff, and cut off and injured its leg, so that it had to be cut off.

*Fourth.* That said child and the plaintiff were guilty of no fault or negligence in the premises.

*Fifth.* That the plaintiff was put to great loss and damage thereby, and great expense for the treatment of his said child, and has lost the benefit and services of said child during his minority, to his damage in the sum of $5,000.

Wherefore, the plaintiff demands judgment againts the defendants for the sum of $5,000, together with the costs of this action.

And the defendants for answer to the complaint in the above entitled action, respectfully show to this court: .

*First.* The defendants admit that they are a corporation duly incorporated under the laws of the state of New York.

*Second.* The defendants have no knowledge or information sufficient to form a belief, as to whether the plaintiff is the father of Frank Burke, an infant, or as to what is the age of the said infant.

*Third.* And the defendants further answering, deny each and every other allegation contained in said complaint.

This action was commenced June 27th, 1865. Issue was joined August 14th, 1865. The cause came on for trial March 15th, 1866, before Justice Mason and a jury.

A verdict was rendered for the plaintiff for the sum of $500, and an allowance of five per cent.

ROBINSON & SCRIBNER, *attorneys, and*
JOHN M. SCRIBNER, JR., *counsel for appellants*

I. No principle of law is better settled than that in this class of cases, to entitle the plaintiff to recover, he must establish *affirmatively* the culpability of the defendant, and the want of any negligence on the part of the plaintiff. (*Button* agt. *Hudson River R. R. Co.* 18 *N. Y. R.* 248; *Deyo* agt. *N. Y. Central R. R. Co.* 34 *Id.* 9.)

An action for negligence cannot be maintained, if the wrongful act or negligence of the plaintiff *co-operated* with the misconduct of the defendant to produce the injury complained of. (*Munger* agt. *Tonawanda R. R. Co.* 5 *Denio*, 255; *Same case affirmed*, 4 *Comst.* 349; *Wilds* agt. *Hudson River R. R. Co.* 24 *N. Y.* 430.)

In the latter case, the rule laid down by the court is, that the party injured must have been entirely free from any degree of negligence contributing to the injury; and that *to carry a case to the jury*, the evidence on the part of the plaintiff must be such, as if believed, would authorize them to find that the injury was occasioned *solely* by the negligence of the defendant.

The same doctrine has been affirmed again and again in the courts, and cases innumerable might be cited to sustain it. (*Johnson* agt. *Hudson River R. R. Co.* 20 *N. Y.* 65; *Steves* agt. *Oswego and Syracuse R. R. Co.* 18 *Id.* 422; *Mangam* agt. *Brooklyn City R. R. Co.* 36 *Barb.* 230; *Suydam* agt. *Grand Street R. R. Co.* 41 *Id.* 375; *Wilds* agt. *Hudson River R. R. Co.* 29 *N. Y.* 315.

Judge GRIDLEY declared this to be "a stern unbending rule of law, which has been settled by a long series of adjudged cases, and which we cannot overrule if we would." (*Spencer* agt. *Utica and Schenectady R. R. Co.* 5 *Barb.* 337; *Deyo* agt. *N. Y. Central R. R. Co.* 34 *N. Y.* 14.)

II. Applying this rule to the circumstances of this case, the plaintiff was clearly not entitled to recover, and the

motion made by defendants' counsel to dismiss the complaint when the plaintiff rested, should have been granted.   The child's own negligence, and that of his parents, was fully established by the very evidence introduced to maintain the plaintiff's cause of action.

1.  The child was proven to have been, at the date of the accident, less than six years of age, and yet was allowed to go at play unattended *in the public streets*, and that too, in a locality where railroad cars were constantly passing.   At the time he recived his injuries, the plaintiff's witnesses locate the boy at play upon a dirt heap extending from the sidewalk nearly to the railroad track.   The plaintiff proved the distance from the sidewalk to the railroad track, to be *five feet nine inches*, which annihilates the statement of the witness Webber, that he was stooping from the sidewalk.   A lad of six years would require to be the child of a giant, to have incurred his injury in that way, and this child was of small stature for his years.

2.  Ella Clayton, one of plaintiff's witnesses, says :  " The car was coming up pretty fast.  *  *  *  Franky was on the dirt in front of house No. 174 Thompson street.   He was playing on the dirt heap.   He had something in his hand, and *just as the car came up* he let it fall, and the car struck him in the forehead, and he went right under the car.   I guess Franky had been on the pile of dirt about fifteen minutes when the car came along."

3.  Witness Logan says :  " I took notice of the child upon a heap of dirt, when the car came along very rapidly.  *  *  * The boy was fifteen or eighteen yards ahead of me, and stooping down upon a heap of dirt.   The car was coming very fast down Thompson street."

4.  Frank Burke, the child injured, gives his statement : " *I was lying there on my back on this heap of dirt*, with my back to the dirt, looking over to get it (the wheel he had lost).   *I was lying down upon the heap of dirt*, and then I tried to pull my leg out, but I could'nt.  *  *  *  I did not

find my wheel, or see it at all. I could'nt, it was over on the heap of dirt. I saw the wheel before the car hit me, and went in to get it, and I was doing like this, getting up, when the car ran over me. I had got hold of the wheel when the car was on top of me."

The dirt heap was midway between the track and the sidewalk. At folio 86, he says: "When it got into the heap of dirt *I ran after it quick*, and when I was trying to pick it up the car run over me."

Adopting the description given of the accident by any one or all of the plaintiff's witnesses, it was a clear case for a non-suit, in accordance with the law governing the questions in issue.

"No matter how gross or evident the negligence of the driver of a vehicle, if another by his own negligence exposes himself to injury from the vehicle, he has no remedy." (*Mangam* agt. *Brooklyn City R. R. Co.* 36 *Barb.* 236 ; *Spooner* agt. *Same defendants*, 31 *Id.* 419.)

A plaintiff suing for negligence must be himself without fault, and the law makes no distinction in consequence of the tender age of the person injured, but holds all, of whatever age, to the same degree of care and foresight. (*Hartfield* agt. *Roper*, 21 *Wend.* 615 ; *Brown* agt. *Maxwell*, 6 *Hill*, 592 ; *Kreig* agt. *Wells*, 1 *E. D. Smith*, 74 ; *Abbott* agt. *Macfie*, 33 *L. J. Ex.* 177 ; *Honigsberger* agt. *Second Arenue R. R. Co.* 33 *How. Pr.* 193 ; *reversing decision in same case*, 1 *Daly*, 89.)

The present action was a stronger case for a non-suit than the case of *Hartfield* agt. *Roper*. In that case, the child, though younger, was sitting in a country road little traveled, while if the boy Frank Burke, tells the truth, *he was lying on his back* in one of the public streets and crowded thoroughfares of a great and busy city, and through which the defendants' cars and other vehicles lawfully using the street, are constantly passing and repassing. A child having no more discretion than to place himself in such exposed and dangerous position, in face of a railroad car approaching in

full sight and at rapid pace (as the plaintiff's witnesses state), was improperly allowed by his parents to be at large in the street unattended.

" An infant is not *sui juris*, he belongs to another, to whom discretion in the care of his person is exclusively confided. That person is keeper and agent for this purpose, and in respect to third persons his act must be deemed the act of the infant; his neglect the infant's neglect." (*Hartfield* agt. *Roper*, supra; *Waite* agt. *Northeastern R. R. Co. E. B. & E.* 719.)

WOODRUFF, J., in *Kreig* agt. *Wells* (*supra*), says: " It cannot be tolerated that in a crowded city like this, parents should suffer their infant children to play unattended in the streets, and for injuries occasioned by their indiscretion, hold others responsible, engaged in the pursuit of their lawful business, without proving the latter guilty of any negligence whatever." (1 *E. D. Smith*, 77.)

III. We have thus far considered only the facts as developed by the evidence introduced on behalf of the plaintiff. An examination of the testimony produced on the part of the defendants, will show that there was clearly nothing in the case to be submitted to the jury.

1. Mr. Golding testified: " I was driving at an unusually slow gate; there was no car in sight behind me, and I was driving at little better than a walk. The boy ran out to catch hold of the car, and the driver warned him off. The car was stopped within six or eight feet." There is an important fact in this connection (disputed only by the witness Webber, who, as we claim, was utterly unworthy of credit, and directly impeached), that the boy was picked up *under the hind step of the car*. This fact was sworn to distinctly by three witnesses, and proves conclusively that the car *could not* have been going fast. The conductor swears the speed of the car was about four miles per hour, and this was uncontradicted. The witness Webber, did not see the child run over, for she says: " I put my hands up to my eyes.   *   *

I did not see when the child was picked up." Her whole story is a mass of contradictions.

2. Golding was fully corroborated by the conductor, and by the lad Gilhooley. This boy did not see Mrs. Webber; the conductor did not see her; Frank Burke did not see her; and *the conclusion is irresistible* that Gilhooley spoke the truth when he told plaintiff's counsel *"she was not there at all."*

3. The witness Webber, was successsfully impeached. Her attack upon the character of the driver was unexpected, but he met it. She says, "he smelled of rum, as if he had been drinking; I smelled liquor on the man, and I saw him stagger." She makes this still stronger on her cross-examination: "I could not say he was very much intoxicaied, but he smelled *awful* of brandy or liquor of some sort; he was drunk enough to affect his walk, and he smelt of brandy; I could not say it made any impediment in his speech, *but still anybody would see and know he was intoxicated;* I am not as positive that he was drunk as that I saw the boy hurt this day, but I know there was liquor on him; I know that he had been drinking, and I know that he staggered, *those things I do know."*

This was evidence of great importance, material to the the point in issue—the negligence of the defendants. If untrue, her statement cannot be allowed the charitable inference of mistake, but must be pronounced *wilfully false,* and its untruth was proved beyond a peradventure.

1. Golding swears that *twenty-seven years* ago he took Father Matthew's pledge *on oath,* and never since has tasted wine or liquor.

2. Brown, the conductor, says: "I had known Mr. Golding then between three and four months; he was as sober a man on that day as I am now at the present moment; he had never, during my acquaintance with him, taken a glass of liquor that I saw."

3. O'Callahan says: "I have known Patrick Golding a number of years, and have been intimate with him; I have

never seen him under the influence of liquor; I have always seen him sober, and I have seen him a good deal."

4. McGuire says: "I have known Golding, I should say, twenty months, and have been where I could see him *daily* a portion of that time; I have never seen him under the influence of liquor in my life."

5. Samuel Parsons, the policeman, called in at Golding's request, says: "I saw the driver on that day; he was perfectly sober."

We ask the court to apply to Mrs. Webber the familiar maxim, *falsus in uno, falsus in omnibus,* and to discredit her testimony altogether. (*Forsyth* agt. *Clark,* 3 *Wend.* 643.)

IV. The court erred in refusing to allow the question, "Suppose a child of the size of the plaintiff's son was standing upon the sidewalk and leaning over to pick up something, could the car have possibly hit him?" The witness was the conductor, who knew the locality and the distance from the car to the sidewalk, and, having seen the child both at the time of the accident and in court at the trial, he was competent to speak on the subject. The question called for a fact, not for an opinion of the witness.

V. The court erred in refusing defendants' offer to send for and prove by their time book that, at the time the driver was sworn by witnesses Webber & Hastie to have been at Mrs. Webber's house, he was actually on duty as driver of one of their cars. The book contained original entries, made in the usual course of business, and, duly authenticated, would have been competent evidence to prove the fact stated, and would of itself have effectually disposed of Webber and Hastie. (*Merrill* agt. *Ithaca and Owego Railroad Co.* 16 *Wend.* 586; *Bank of Monroe* agt. *Culver,* 2 *Hill,* 531.)

VI. The propriety of a non-suit in an action of this character, where the plaintiff's proofs are insufficient to sustain a cause of action, is very manifest.

BARCULO, J., in *Harring* agt. *New York and Erie Railroad Co.,* says "We cannot shut our eyes to the fact that in

certatn controversies between the weak and the strong, between an humble individual and a gigantic corporation, the sympathies of the human mind naturally, honestly and generously run to the assistance and support of the feeble and apparently oppressed, and that compassion will sometimes exercise over the deliberations of a jury an influence which, however honorable to them as philanthropists, is wholly inconsistent with the principles of law and the ends of justice. There is, therefore, a manifest propriety in withdrawing from the consideration of the jury those cases in which the plaintiff fails to show a right of recovery." (*Harring* agt. *N. Y. and Erie Railroad Co.* 13 *Barb.* 15; *Suydam* agt. *Grand Street Railroad Co.* 41 *Barb.*, 380.)

VII. The power and duty of the court to reverse a judgment, where the verdict is against the evidence, or against the weight of the evidence, is determined in the following, among other cases: *Sheldon* agt. *Hudson River Railroad Co.* 29 *Barb.* 226; *Thompson* agt. *Menck*, 22 *How. Pr.* 431; *Heritage* agt. *Hall*, 33 *Barb*;, 347; *Wilds* agt. *Hudson River Railroad Co* 24 *N. Y.* 430; *Macy* agt. *Wheeler*, 30 *N. Y.* 231.)

The appellants seek to have this judgment reversed, and request the court to regard it in the language of SMITH, J., in *Mackey* agt. *New York Central Railroad Co.* (27 *Barb.* 541), as "directly against the evidence, and we cannot uphold it, or refuse to set it aside, unless we adopt the rule which is, I fear, quite prevalent in the jury box, that the same measure of justice is not to be meted out to a railroad corporation that is meted out to natural persons."

The order and judgment appealed from should be reversed and a new trial granted, with costs to abide event.

MILLER, PEET & NICHOLS, *attorneys, and*
LIVINSTOM K. MILLER, *counsel for defendant.*

I. Defendant's case presents four exceptions:
(*a.*) To denial of motion to dismiss complaint.

. (b.) To a question, at folio 74

(c.) To the refusal of the court, after the evidence had closed, to allow defendants to send some miles for the drivers' book, in order thereby to contradict plaintiff's witnesses.

(d.) To the denial of his renewed motion to dismiss.

We submit that the first exception is not well taken; for in all cases of conflicting evidence as to negligence, the jury are the proper judges of the facts. · (*Drew* agt. *Sixth Avenue Railroad*, 26 *N. Y.* 49; *Ernst* agt. *Hudson River Railroad*, 32 *How. Pr. R. p.* 61, *p.* 88.)

The question at folio 74 was properly rejected, because it called for witnesses' opinions and not for facts. (*See Keller* agt. *N. Y. Central Railroad Co.* 24 *How. Pr. R:* 184; *Cook* agt. *Brockway*, 21 *Barb.* 331; *Morehouse* agt. *Matthews*, 2 *Comstock*, 514.)

He was immediately allowed to testify as to what was the distance, so that the jury could judge of the facts.

The third exception was as to what was entirely a matter of discretion, and cannot be sustained. ·

The fourth and first exceptions are the same.

II. The jury having found a verdict, after a charge which, not having been inserted in the case, or excepted to by them, must be considered to have been most favorable to defendants, the court will not disturb the verdict.

III. The judgment should be affirmed, with costs.


*By the court*, LEONARD, P. J. An infant, when suing on his own behalf, for injuries to his person, arising from the negligence of others, must be free from the imputation of negligence on his part, tending to produce the damages sought to be recovered. The rule is the same, whether the action be by an infant or an adult. We would not hesitate to hold an adult person who should rush from the sidewalk, when a street rail car was passing near (within four feet of the curbstone, when the proper allowance is made for the projection of the car body beyond the railroad track), and lying down upon a

heap of sand placed in the narrow space between the track and curbstone, seeking to recover an article which had fallen from his hand, upon such narrow space, to be guilty of inexcusable negligence.

In reckless and childish haste, the infant approached so near the car as to bump his head against it. It is no excuse that he did not see the car. It appears to be negligence not to have done so; ordinary prudence would have prevented. Nor is it any excuse that he had less discretion than a man.

He is required to exercise the prudence of a person of ordinary intelligence, before an action for damages arises for an injury to his person, resulting partly from the carelessness of others. The lad was required to take the same care of himself as any other person. All are held accountable for a reasonable degree of prudence as to their own safety. That reasonable care is the same, whether the rule be applied to a simpleton or a wise man. An injury received, without reasonable prudence on the part of the person injured, gives no right to recover amends in pecuniary damages.

The father can recover only under the same circumstances of prudence as would be required if the action were on behalf of the boy.

The negligence of the driver was, it is clear, a question for the jury, and it was properly submitted.

The motion to dismiss the complaint should have been sustained upon the other ground.

The call of Mrs. Webber was a warning to the child as well as to the driver of the car. It is difficult to understand, from the evidence, that the driver could have managed the car so as to have prevented the accident; but I lay no weight upon this question, and am of opinion, under the decision of the case of *Ernst* agt. *The Hudson River Railroad Company*, that the case on this point should have been left to the jury, had it not been beyond doubt that the negligence of the boy contributed to produce the injury.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CLERKE, J. concurring.

MILLER, J., dissenting.